IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JP MORGAN CHASE BANK, N.A.,

       Plaintiff,

                              CIVIL ACTION NO.

v.                            1:10-cv-1666-JEC

RODNEY D. SAMPSON,

       Defendant.

## ORDER AND OPINION

This case is before the Court on plaintiff's Motion for Judgment on the Pleadings [8], defendant's Motion to Extend Time to respond to plaintiff's Motion for Judgment on the Pleadings [11], and plaintiff's Cross-Motion to Strike defendant's Response to plaintiff's Motion for Judgment on the Pleadings [12].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Judgment on the Pleadings [8] should be **DENIED**, defendant's Motion to Extend Time to respond to plaintiff's Motion for Judgment on the Pleadings [11] should be **GRANTED**, and plaintiff's Cross-Motion to Strike defendant's Response to

Plaintiff's Motion for Judgment on the Pleadings [12] should be **DENIED**.

<u>**BACKGROUND**</u>

This case arises from a foreclosure dispute that ensued when the defendant ceased making his mortgage payments.  Defendant Rodney D. Sampson ("Sampson") took title to property located in Cobb County, Georgia (the "Property") by a warranty deed recorded on July 11, 2002.  (Security Deed, attached to Compl. [1] at Ex. A.)[1]  On October 29, 2004, Sampson executed a note with Washington Mutual Bank, FA, for the principal amount of $ 1,336,000.00 (the "Note").  (Note, *Id.* at Ex. B.)  On the same day, Sampson executed a security deed, securing the Property as collateral for the Note (the "Security Deed").  (Security Deed, *Id.* at Ex. C.)  As of September 25, 2008, plaintiff JP Morgan Chase Bank, N.A. ("JP Morgan") became a successor of Washington Mutual Bank, FA, and it is the current holder of the Note and the Security Deed.  (Purchase & Assumption Agmt., *Id.* at Ex. D.)  Sampson defaulted on the Note and Security Deed, and JP Morgan purchased the Property at the non-judicial foreclosure sale it conducted on July 7, 2009.  (Deed Under Power of Sale, *Id.* at Ex. E.)

---

[1]  The Court considers documents attached to the pleadings because they are central to plaintiff's claim and undisputed.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)(court may consider documents attached to 12(c) motion for judgment on the pleadings without converting it into motion for summary judgment if documents are central to plaintiff's claim and undisputed).

On March 3, 2010, Sampson filed suit in state court (the "First Suit") essentially challenging, on several grounds, JP Morgan's foreclosure of his Property. The case was subsequently removed to this federal court.[2] (*See Sampson v. Washington Mutual Bank*, 1:10-cv-627-WCO at [1]; and in the instant case, Mag. R&R, attached to Pl.'s Mot. for J. on the Pleadings [8] at Ex. A.) The presiding judge, Judge O'Kelley, dismissed the Complaint on February 25, 2011. (Order of Feb. 25, 2011, *Id.* at Ex. B.) The Eleventh Circuit Court of Appeals affirmed the dismissal on October 5, 2011. *See Sampson v. Washington Mut. Bank*, No. 11-11400, 2011 WL 4584780 (11th Cir. Oct. 5, 2011).

While the First Suit was pending before Judge O'Kelley, plaintiff JP Morgan filed the present complaint, on May 28, 2010. This complaint also dealt with the subject Property. (Compl. [1].) This "Second Suit" was assigned to the undersigned.[3] In Count I,

---

[2] JP Morgan's request that the Court take judicial notice of another court's orders is **GRANTED**. *See Jiles v. UPS, Inc.*, 413 Fed. App'x 173, 174 (11th Cir. 2011)("A court may take judicial notice of another court's orders to recognize judicial action or the litigation's subject matter.")

[3] The Court does not understand why, when it filed this case, plaintiff JP Morgan did not alert the Clerk that this case was related to the case then pending before Judge O'Kelley. The Civil Cover Sheet directions clearly indicate that civil cases are deemed related if the pending case involves property in an earlier numbered pending suit. (Civil Cover Sheet [1-7].) By not notifying the Court, plaintiff not only disregarded the directions, and made an inaccurate statement in its filing, but it has delayed resolution of

plaintiff seeks a declaration that it is the sole legal owner of the Property. (*Id.* at ¶ 22.)  Further, relying on the terms of the Note and Security Deed, plaintiff requests an order entitling it to payment of business proceeds and/or rent defendant gained from the Property, possession of any business on the Property, and possession of whatever improvements defendant made to the Property. (*Id.*)  In Count II, JP Morgan seeks damages for the full amount of the business proceeds and/or rent defendant derived from the Property, plus interest and costs. (*Id.* at ¶¶ 24-25.)  JP Morgan moves for judgment on the pleadings [8].

<u>**DISCUSSION**</u>

**I.   <u>PRELIMINARY MATTERS</u>**

This litigation has been stymied by the parties' failure to address the substance of each another's arguments.  In responding to JP Morgan's Motion for Judgment on the Pleadings, Sampson provides a half-hearted argument that JP Morgan's claims should be dismissed on the grounds of *res judicata* or collateral estoppel. (Resp. Br. [10] at 4-5.)  Sampson's response has been unhelpful, as the argument section of his brief is a mere page-and-a-half, and it is completely devoid of even a mention of the requirements of *res judicata* or

_____

this matter and created piecemeal litigation that has caused this Court to unnecessarily expend its scarcest resource: time.

4

collateral estoppel, much less how they apply to the facts of this case.

Rather than address the merits of Sampson's preclusion argument, JP Morgan moved to strike defendant's brief as unresponsive. (Motion to Strike [12].) As Sampson's argument, if persuasive, would have been highly responsive, the Court was forced to direct JP Morgan to file a substantive reply to defendant's preclusion argument. (Order of Jan. 3, 2012 [13].) JP Morgan ignored this order until its case was in danger of dismissal for failure to respond to the Court's Order. (Order of Jan. 27, 2012 [16].) Although not offering any excuse or reason for its failure to respond to the Court's direction to file a reply brief, JP Morgan finally submitted a reply [17].

Defendant Sampson responded to plaintiff's Motion for Judgment on the Pleadings. Although filed over two weeks late, the Court will consider his response [10]. *See Thomas v. Kroger Co.*, 24 F.3d 147, 149 (11th Cir. 1994)(a district court may consider an untimely motion if doing so would be the course of action most consistent with the interest of judicial economy). Sampson's contemporaneously filed Motion for an Extension of Time to File a Response to Plaintiff's Motion for Judgment on the Pleadings [11] is therefore **GRANTED**.[4] JP

---

[4] Although the Court accepts his late-filed response, Sampson's grounds for seeking an extension of time are entirely unpersuasive. He argues that an extension is warranted for "cause shown" because he "inadvertently assumed" that the present action would be consolidated

Morgan's Motion to Strike [12] this late-filed response as frivolous is also **DENIED**. *See Jeter v. Montgomery Cnty.*, 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007)("The terms of Rules 12(f) and 7(a) make clear that only material included in a <u>pleading</u> may be subject of a motion to strike and that motions, <u>briefs</u> or memoranda, objections, or affidavits may not be attacked by the motion to strike.")(emphasis added)(citations omitted).

II.  <u>APPLICABLE LAW</u>

    After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *Cunningham v. Dist. Att'y's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

--------------------------------------------------------------------------------

with defendant's earlier offensive action. (Mot. For Extension of Time [11] at ¶¶ 5-8.) There are two serious problems with this position. First, defendant's offensive action was <u>dismissed</u> before plaintiff even filed its motion for judgment on the pleadings here, on March 21, 2011. (Order of Feb. 25, 2011, attached to Pl.'s Mot. for J. on the Pleadings [8] at Ex. B.)

    Second, no party moved to consolidate the two actions at any point. In other words, even if there was an earlier suit pending with which to consolidate, defendant never took the initiative to consolidate them.

6

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008); *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). Thus, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010); *Jiles*, 413 Fed. App'x at 174 ("dismissal is not appropriate unless the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct."). In applying this standard, factual allegations are accepted as true, but the same benefit is not afforded to bare "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). When the plaintiff provides enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the complaint is "plausible on its face." *Id.* "Labels and conclusions" and a "formulaic recitation of the elements of a cause of action" are insufficient to raise a right to belief above the "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

7

III. **PRECLUSION**

Defendant Sampson challenges plaintiff's Motion for Judgment on the Pleadings only on the ground of preclusion.  When a federal court sitting in diversity examines the collateral estoppel or *res judicata* effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law.  *CSX Transp., Inc. v. Bhd. of Maint. of Way Empls.*, 327 F.3d 1309, 1316 (11th Cir. 2003)(federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction).  The doctrine of *res judicata*, also known as claim preclusion, "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Maldonado v. United States Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011).  For *res judicata* to apply, the Court must find that (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.  *Griswold v. Cnty. of Hillborough*, 598 F.3d 1289, 1292 (11th Cir. 2010).  *Res judicata* is an affirmative defense to be established by the pleader.  *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)("Claim preclusion, like issue preclusion, is an affirmative defense.").

8

As best the Court can discern, defendant Sampson contends that JP Morgan's present claims are barred by *res judicata* because these claims were not raised as counterclaims in the First Suit between the parties.  (Resp. Br. [10] at 4-5.)  Under the doctrine of *res judicata*, "one who has a counterclaim arising out of the same transaction or occurrence and does not advance it will be thereafter precluded from asserting it."  *Lawhorn v. Atl. Ref. Co.*, 299 F.2d 353, 356 (5th Cir. 1962).[5]  Federal Rule of Civil Procedure 13(a), which governs compulsory counterclaims, requires that "[a] pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a).

Albeit plaintiff does not make this argument, the Court concludes that plaintiff's current claims would not have been compulsory counterclaims in the First Suit because of the timing of the dismissal of that case.  That is, Rule 13(a) only requires a compulsory counterclaim if the party who desires to assert a claim

---

[5]   Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

has served a <u>pleading</u>. *Id.* A motion to dismiss under Rule 12(b)(6), which JP Morgan successfully filed in the earlier action,[6] is not a pleading, and therefore plaintiff was not required to include these counterclaims in the first action, even if they would otherwise have been compulsory. *See* FED. R. CIV. P. 7(a)(defining the following as pleadings: complaint, answer, answer to a counterclaim designated as a counterclaim; answer to crossclaim; third-party complaint; answer to third-party complaint). *See Lawhorn*, 299 F.2d at 356-57 (concluding that failure to file counterclaim along with motion to dismiss did not prevent raising that claim in separate proceeding).

But for the fact that JP Morgan had not yet served a pleading when it filed its motion for a dismissal, the present claims filed by it in this action might be precluded under *res judicata* as arising out of the same nucleus of fact.[7] As it were, because JP Morgan's

---

[6] Although the district court treated defendant's Motion as one for Judgment on the Pleadings, the Eleventh Circuit explained that this was error because defendants never filed an answer in the case and the motion should properly be viewed as a motion for failure to state a claim under Rule 12(b)(6). *Sampson*, 2011 WL 4584780, at *1 n.2.

[7] JP Morgan's assertion that claim preclusion should not apply because the causes of action in the First Suit and present litigation are not "identical" is debatable. Two cases are generally considered to involve the same cause of action if the latter case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as the former one." *Maldonado*, 664 F.3d at 1375. Both Georgia and federal courts consider whether two causes of action are "logically related" in deciding whether a counterclaim is required. *See Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir.

10

dismissal of the first action was granted prior to its serving any pleading, it was not obligated to raise the claims in the prior suit as a compulsory counterclaim.  Thus, the claim preclusion bar does not apply.

Collateral estoppel also does not apply to JP Morgan's claims. Issue preclusion, or collateral estoppel, "bars the relitigation of matters that were actually litigated and decided in a prior suit." *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir. 1991).  The

---

2000)("all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence" for the purposes of Rule 13(a)).  *See also Willis v. Nat'l Mortg. Co.*, 235 Ga. App. 544, 546 (1998)("both federal and state courts employ the 'logical relationship' test in determining whether a counterclaim is compulsory.").

According to plaintiff JP Morgan, the issues raised by Sampson in the prior case all related to alleged misrepresentations at or before the closing of the loan, whereas the issues in the present action relate to plaintiff's entitlement to Sampson's rental proceeds after the loan's closing, pursuant to the Note.  (Reply Br. [17] at 4.)  However, Sampson also brought a claim for wrongful foreclosure in the first action (*Id.* at 2), which was arguably "logically related" to an action to recover under the mortgage note.  *See, e.g., Willis*, 235 Ga. App. at 546.("Claim for wrongful foreclosure is logically related to the action to collect on the same note."); *Goss & Goss Dev. Co. v. First Union Nat'l Bank of Ga.*, 196 Ga. App. 436, 437 (1990).  *But see Bowen v. Wells Fargo Bank, N.A.*, No. 2:11-cv-91-FtM-29SPC, 2011 WL 3627320 at *3-*4 (M.D. Fla. Aug. 17, 2011)(logical relationship test not met where first action was judicial order of foreclosure and second action was for fraud preceding foreclosure itself)(applying Florida law).

The Court does not have to decide this question, however, as JP Morgan was not required to raise compulsory counterclaims in the prior proceeding.

application of collateral estoppel, or issue preclusion, requires that "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action." *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985).

The First Suit was disposed of through a Rule 12(b)(6) motion to dismiss. Because such a dismissal with prejudice is, by its nature, an unlitigated matter, collateral estoppel does not apply. *See Pelletier,* 921 F.2d at 1501 ("The preclusive effect of a dismissal with prejudice, an unlitigated matter, thus is examined under the requirements for claim preclusion. Since such a judgment is unaccompanied by findings, it does not, however, collaterally estop the plaintiff from raising issues that might have been litigated if the case had proceeded to trial.").

In addition, it is difficult to understand how one would apply collateral estoppel to the rent issue in this case, as the issues in the first case dealt with JP Morgan's right to foreclose against the property, and did not involve the latter's present claim of a right to rent earned from the property. As to JP Morgan's claim to quiet title, Sampson is fortunate that collateral estoppel does not apply because that doctrine prevents relitigation of issues  necessarily

12

decided against the party opposing estoppel.  As Sampson lost in the First Trial on the foreclosure issues and as a claim by the bank to quiet title appears very related to its earlier right to foreclose, Sampson should be opposing any effort to estop him from litigating this matter in the second case, not advancing an estoppel theory.

For all the above reasons, the Court concludes that collateral estoppel does not apply in this case. Therefore, defendant Sampson's efforts to use *res judicata* or estoppel principles to forestall plaintiff's motion for judgment on the pleadings is rejected.

## IV. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS IS NOT MERITORIOUS

Albeit defendant's objections to plaintiff's motion for judgment on the pleading are inapt, the Court has, itself, reviewed the substance of that motion and finds it greatly lacking on other grounds.

### A.   Declaration of Legal Ownership

In Count I of the Complaint, plaintiff seeks a declaratory judgment and equitable decree establishing that JP Morgan is legal owner of the Property, whose title it obtained through a power of sale.  (Compl. [1] at ¶ 22.)  As such, it is the legal owner of the property unless the sale is set aside. *Bellamy v. FDIC*, 236 Ga. App. 747, 749 (1999); *Womack v. Columbus Rentals, Inc.*, 223 Ga. App. 501, 503 (1996); *Hague v. Kennedy*, 205 Ga. App. 586, 588 (1992).

13

Defendant Sampson has not presented any argument that the sale should be set aside.   The arguments that he made in the first action were rejected by the district court and the Eleventh Circuit.

Nevertheless, plaintiff JP Morgan has not demonstrated its entitlement to a judgment on its claim to quiet title.   Such a claim must contain:

> a particular description of the land to be involved in the proceeding, a specification of the petitioner's interest in the land, a statement as to whether the interest is based upon a written instrument...or adverse possession[,] or both, a description of all adverse claims of which petitioner has actual or constructive notice, the names and addresses, so far as known to the petitioner, of any possible adverse claimant, and, if the proceeding is brought to remove a particular cloud or clouds, a statement as to the grounds upon which it is sought to remove the cloud or clouds.

O.C.G.A. § 23-3-62(b).   Further, a complaint seeking to quiet title must be referred to a special master and also be accompanied by: "(1) a plat of survey of the land, (2) a copy of the immediate instrument or instruments, if any, upon which the petitioner's interest is based, and (3) a copy of the immediate instrument or instruments of record or otherwise known to the petitioner, if any, upon which any person might base an interest in the land adverse to the petitioner." *Id.* at § 23-3-62(c); O.C.G.A. § 23-3-63 (providing for submission of quiet title petition to special master).

Leaving aside the question whether verification of the complaint or referral to a special master are state procedural requirements

that need not be met in litigation in a federal forum, plaintiff has not filed a "plat of survey of the land" as required by O.C.G.A. §23-3-62(c)(1).  This would seem to be a fundamental prerequisite for quieting title.  *See Joseph v. CitiMortgage,* No. 1:11-CV-2768-TWT, 2011 WL 5156817 at *2 (N.D. Ga. Oct. 27, 2011)(Thrash, J.)(dismissing quiet title claim for failure to verify complaint and failure to file a plat survey of the land); *Simpson v. Countrywide Home Loans*, No. 1:10-CV-0224-CAM-ECS, 2010 WL 3190693 at *7-*8 (N.D. Ga. Apr. 26, 2010)(Scofield, Mag.)(dismissing claim for failure to comply with O.C.G.A. § 23-3-62.); *Mann v. Blalock*, 286 Ga. 541, 543 (2010)(upholding finding that quiet title was procedurally deficient because complaint did not include a plat of survey of the land). Likewise, the Complaint does not make clear what cloud is presently over the title that plaintiff claims needs to be quieted. For the above reasons, JP Morgan's request for declaratory relief regarding the legal ownership of the Property is **DENIED**.

> B.   Dispute over Rent Proceeds

Plaintiff JP Morgan also requests a declaration and a judgment entitling it to payment of the business proceeds and/or rent Sampson collected while in possession of the property, as well as the possession of any business on the Property, its improvements, buildings, fixtures and appurtenances, which Sampson should be prohibited from removing.  (Compl. [1] at ¶ 22.)  With respect to the

15

rental proceeds, plaintiff basically contends that defendant Sampson engaged in "rent skimming." Rent skimming occurs when a defendant is in default on a mortgage, and continues to collect rent for his own personal benefit. *See* CAL. CIV. CODE § 890(a)(1)("'Rent skimming' means using revenue received from the rental of a parcel of residential real property at any time during the first year period after acquiring that property without first applying the revenue or an equivalent amount to the payments due on all mortgages and deeds of trust encumbering that property.").[8] According to plaintiff, the terms of the Security Deed prohibit Sampson's misapplication of his rent proceeds, which entitles JP Morgan to recover the amounts collected.

Under a section titled "UNIFORM COVENANTS," Sampson agreed that "Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy...." (Security Deed, attached to Compl. [1] at Ex. C, p. 7, ¶ 6.) The Security Deed also provides that Sampson assigned all miscellaneous proceeds to the Lender, and must pay these proceeds

---

[8] Some jurisdictions permit civil or criminal liability for this practice, although Georgia does not appear to be one of them. *See* CAL. CIV. CODE § 890; 12 U.S.C. § 1709-2 (criminalizing equity skimming).

16

to the Lender.  (*Id.* at p. 10, ¶ 11.)  "Miscellaneous proceeds" are
defined as:

> <u>any compensation</u>, settlement, award of damages, or proceeds
> whether by way of judgment, settlement or otherwise, paid by any
> third party (other than insurance proceeds <u>paid</u> under the
> coverage described in Section 5) <u>for</u>: (I) <u>damage to</u>, or
> destruction of, the Property; (ii) condemnation or other taking
> of all or any part of <u>the Property</u>; (iii) <u>conveyance in lieu of
> condemnation</u>; <u>or</u> (iv) <u>misrepresentations of</u>, or omission as to,
> <u>the value and/or condition of the Property</u>.

(*Id.* at p. 2, ¶ L.) (emphasis added).

According to plaintiff JP Morgan, the rent paid to Sampson is
"[m]iscellaneous [p]roceeds" because it is "proceeds paid by [a]
third party...for...misrepresentations of, or omissions as to, the
value and condition of the Property." (Compl. [1] at ¶ 18.) The
Court is aware of no Georgia court that has interpreted this
particular language in a reported opinion.  Plaintiff's proposed
reading, however, seems to be quite a stretch.  Proceeds paid by a
third party for "misrepresentations of, or omissions as to, the value
and condition of the Property" clearly refers to monies received as
a result of a tort or breach of contract cause of action brought by
the borrower against a third-party.  *See In re Nail*, 446 B.R. 292,
297 (8th Cir. 2011)(describing exact same "[m]iscellaneous
[p]roceeds" definition as referring to settlement from a tort cause
of action).  In contrast, "rent" is the "[c]onsideration paid,
usually periodically, for the use or occupancy of property." BLACK'S

LAW DICTIONARY (9th ed. 2009).  Plaintiff's reading of the Security Deed seems unsupported by the language in that document.  It, therefore follows that JP Morgan has not stated a "plausible" claim for relief as to its request for a declaration that it is entitled to rent proceeds or an actual award of rent proceeds.  Accordingly, JP Morgan's request for declaratory relief, or a judgment, as to any rent proceeds is **DENIED**.[9]

With respect to the claim for possession of "any business on the Property, its improvements, buildings, fixtures and appurtenances," plaintiff JP Morgan does not sufficiently articulate how any provision, including one that governs preservation, maintenance, and protection of the Property, affords this right.  Therefore, plaintiff's request in Count I for a declaration that it is entitled to possession of any business on the Property is also **DENIED**.

To the extent JP Morgan is requesting an order granting possession of the property and that Sampson pay rent for his continued occupation of the Property since the foreclosure, he does not appear to have demonstrated compliance with the requirements for

---

[9]   The Court also has doubts that JP Morgan has standing to obtain a declaration that Sampson owes past rent proceeds.  Past injuries are an inappropriate basis for declaratory relief.  *See Walden v. CDC*, ___ F.3d ___, No. 10-11733, 2012 WL 371871 at *5 (11th Cir. Feb. 7, 2012) ("Injury in the past...does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").

obtaining such relief. *See* O.C.G.A. § 44-7-50 (requiring filing of affidavit in order to obtain writ of possession); O.C.G.A. § 44-7-55 (permitting entry of writ of possession and judgment for rents due). Considering all of the above, plaintiff's Motion for Judgment on the Pleadings [8] is **DENIED**. Moreover, the Court has serious concerns whether a dispossessory action would give rise to a sufficient value of the action necessary to create diversity jurisdiction.

In conclusion, plaintiff has failed to demonstrate its entitlement to judgment on the pleadings, not because of a disputed issue of fact, but because its claims fail as a matter of law. Accordingly, unless JP Morgan amends its complaint to state a plausible claim for relief, the Court will dismiss its complaint. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011)(A "district court can only dismiss an action on its own motion 'as long as the procedure employed is fair[,]'" which includes "notice of its intent to dismiss or an opportunity to respond"); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007)(upholding *sua sponte* dismissal for failure to state a claim where court granted plaintiff leave to amend complaint); *Helton v. Hawkins*, 12 F. Supp. 2d 1276, 1283 (M.D. Ala. 1998)(notifying plaintiff of intention to *sua sponte* dismiss complaint if not amended).

19

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Judgment on the Pleadings [8] is **DENIED**, defendant's Motion to Extend Time to respond to plaintiff's Motion for Judgment on the Pleadings [11] is **GRANTED**, plaintiff's Cross-Motion to Strike defendant's Response to Plaintiff's Motion for Judgment on the Pleadings [12] is **DENIED**. Further, because the Court has determined that plaintiff's claims have not been adequately pled, the Court will dismiss plaintiff's complaint unless, **by April 23, 2012**, JP Morgan amends its complaint to state a claim for relief.

Should JP Morgan not wish to proceed with this action in federal court, the Court is willing to dismiss without prejudice this case to allow any further litigation in the state court system where JP Morgan should have brought this case to begin with. Federal courts are not adept at quieting title; state courts are set up for this purpose. To more expeditiously reach its desired goal, the Court strongly urges plaintiff to litigate any remaining issues in this foreclosure action in a state court that is better equipped to handle these matters.

Accordingly, in lieu of an amended complaint, the plaintiff may also file a motion to dismiss without prejudice, which this Court will grant.

20

SO ORDERED, this <u>20th</u> day of March, 2012.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)